**Mary B. SIGMON, Plaintiff,**

v.

**William E. POE, Individually and as Chairman, Char-Meck Board of Education, et al., Defendants.**

**No. C–C–74–158.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 24, 1975.

William K. Diehl, Jr., James, Williams, McElroy & Diehl, P. A., Charlotte, N. C., for plaintiff.

Harry C. Hewson, Jones, Hewson & Woolard, Charlotte, N. C., for defendants.

William H. Booe pro se.

## ORDER

McMILLAN, District Judge.

On September 5, 1974, an order was entered requiring the defendants to reinstate plaintiff in her position as a school teacher, and to conduct a hearing or cause such a hearing to be conducted on the question whether their original refusal to re-employ her was "arbitrary, capricious, discriminatory or for personal or political reasons."

An issue arose as to the tribunal for this hearing. On October 18, 1974, another order was entered in which the court (1) declined the suggestion that the court conduct the hearing; (2) suggested that the Board arrange for some tribunal other than the Board for that purpose; but (3) refused to hold as a matter of law that the Board was legally incompetent from a due process standpoint to conduct such a hearing.

The defendants constituted a five-person committee of the Board to hear the case and went ahead with the hearing.

The hearing was conducted on the nights of November 18, 19 and 25, 1974; the Board voted to stand by its original decision not to renew Mrs. Sigmon's contract; and plaintiff sought further relief in this court.

Thereafter, a hearing was conducted in this court on the 17th day of January, 1975; evidence was taken; and the reporter's transcript of the evidence in the November hearing before the Board (420 pages plus numerous exhibits) was received and has been reviewed by the court.

The hearing demonstrated the correctness of the court's original view that regardless of whether the Board had satisfied due process it would have been better to have had the hearing before some other tribunal. Sharp tempers, impatience and scars from old animos-

ities were revealed in a number of pointed exchanges between plaintiff's counsel and members of the Board.

The uncomfortable issue presented to the court is not whether the hearing was unpleasant (it was), but whether it is supportable legally under standards of due process.

Plaintiff raises a number of serious questions.

To begin with, plaintiff asserts that she is a competent teacher and that the only evidence bearing adversely upon her teaching performance was the opinion of her principal, Mr. Jaynes, which should not carry the day because Jaynes had observed her work very little and because she obviously had a substantial personality conflict with him (she not being the only one having such conflicts with Mr. Jaynes).

The court is of the opinion that the evidence falls short of demonstrating Mrs. Sigmon to be professionally incompetent to teach in the schools, and the testimony of numerous witnesses in support of her accomplishments and capacity is noteworthy.

■ However, the question is not whether she is an incompetent teacher; such a finding was not required in order to support the non-renewal of her contract, nor to satisfy the requirements of due process. The question, rather, is whether the failure to renew her contract was for "arbitrary, capricious, discriminatory or for personal or political reasons." If due process and the requirements of the statute are satisfied, she has no right to continued employment even if she is the best teacher in the world.

In short, I have not considered this case as an inquisition into Mrs. Sigmon's competence or capacity to teach school, and do not now so consider it.

■ Plaintiff contends that the members of the Board had already made up their minds. Since several of the members of the five-person group who conducted the hearing had not even participated in the original hearing or the original decision not to continue the contract, and since there was no evidence that they had prejudged the case, I do not believe this contention will stand. I have no doubt that emotionally the question was whether to "support our principal" or not; that members were sensitive to this pending suit against them; and that members of the Board may have started out with some predisposition in the case. If so, that puts them in the same position frequently occupied by a judge or jury. In the vast majority of cases a trial judge sitting without a jury forms an early impression about the merits of the case. His final decision, about half the time, will coincide with that first impression, and, about half the time, it will be different from it. The purpose of a hearing is to require people to sit and listen until they have heard all sides, and have recognized their own leanings, and have done their best to be fair.

■ Plaintiff contends that the Board members were unfair in their examination and cross-examination of witnesses. I have examined the record of the hearing (without undertaking to listen to tapes for shading and nuances of voice and inflection), and although I would consider some of the Board's questioning of the witnesses to be hard-nosed and persistent and sometimes one-sided, I believe it to be honest in its general thrust. One Board member appeared overly interested in analogizing the roles of School Board and school teacher with those of private employer and private employee; this analogy presumes that due process is immaterial and is, therefore, erroneous. However, since in other questioning he and other members of the Board showed a recognition that the issue was one of due process in a public setting rather than the whim of a private employer, I do not see where use of this analogy was constitutionally fatal. One member of the Board repeatedly and without foundation accused counsel for the plaintiff

of "legal trickery" (this implies dishonesty) because of counsel's intensity and persistence in seeking to bring out information favorable to his client. I saw nothing in anything counsel had done which suggested or would even support an inference of anything dishonest, and, of course, deplore an unfounded public accusation by one in a judicial position that a lawyer is guilty of "trickery." This attack on counsel, however, did not render the hearing constitutionally defective.

One member of the Board, apparently over the violent objection of counsel for the plaintiff, continued during the hearing to work with needles and yarn doing crewel embroidery. Plaintiff attacked this activity as a studied effort to show disdain for plaintiff's evidence and position. The distinction between crewel embroidery and knitting may not be enough to remove reminiscence of Madame Defarge, the French Revolution and the guillotine; a studied persistence in conduct which is obviously thought by a litigant to be a show of hostility is an unjudicious mannerism. This, again, while not inspiring confidence in attentiveness or impartiality, falls somewhat short of the fundamental unfairness which due process is designed to avoid. If the Board members conduct any more hearings, I am sure they will not intentionally indulge in such mannerisms after discovering that they do touch sensitive nerves in counsel or litigants.

The above comments on particular contentions raised by plaintiff appear to be the minimum necessary to deal with the serious due process contentions and the minimum necessary for the protection or guidance of the School Board in the event they undertake any more such hearings.

It remains the opinion of this court, however, that essential fairness would be better served and the School Board members would save themselves a lot of hard labor if they set up a board of administrative people unconnected with a particular suspension or discharge problem for the conduct of any future hearings. Perhaps the procedure set out in the statute dealing with tenured teachers will provide some guidance along that line.

### CONCLUSION

Although I do not read the evidence as demonstrating incompetence on Mrs. Sigmon's part, it does include a basis upon which the Board could properly find that her discharge was not "arbitrary, capricious, discriminatory or for personal or political reasons." Despite the hostilities and acrimony generated (or displayed) during the hearing, I do not find the hearing to have been constitutionally defective measured by due process standards.

### ORDER

The temporary restraining order is dissolved. The parties will advise by March 1, 1975, whether any further hearing on the merits is desired.